**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| V&S ELMWOOD LANES, INC., <br><br> Plaintiff, <br><br> v. <br><br> EVEREST NATIONAL INSURANCE COMPANY, SPECIALTY INSURANCE GROUP, <br><br> Defendants. | **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff, V&S Elmwood Lanes, Inc. ("Plaintiff" or "V&S") brings this Complaint against Defendant, Everest National Insurance Company ("Everest") and Specialty Insurance Group ("Specialty") and alleges as follows:

## NATURE OF THE CASE

1. This is a civil action seeking declaratory relief arising from Plaintiff's contract of insurance with Defendant.

2. In light of the Coronavirus global pandemic and state and local orders mandating that all non-essential in-store businesses must shut down, and the suffering of physical harm and impact and damages, within Plaintiff's business premises and/or within the immediate area surrounding and outside its business premises, Plaintiff was forced to suspend its regular business to customers on March 16, 2020.

3. Plaintiff's insurance policy provides coverage for all non-excluded business losses and thus provides coverage here.

1

4.      As a result, Plaintiff is entitled to declaratory relief that its business is covered for all business losses that have been suffered and sustained, which losses are in an amount greater than $150,000.00.

## JURISDICTION

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendant. Plaintiff is a bowling alley in Pennsylvania and a citizen of Pennsylvania. Defendants are New Jersey and Indiana corporations with their principal places of business in New Jersey and Indiana. Further, Plaintiff has suffered business losses in an amount greater than $150,000.00. The amount in controversy necessary for diversity jurisdiction over a declaratory judgment action is measured by the value of those business losses. *Id.* § 1332(a).

6.      This Court has personal jurisdiction over Defendants.  At all relevant times Defendants have engaged in substantial business activities in Commonwealth of Pennsylvania. At all relevant times Defendants transacted, solicited, and conducted business in Pennsylvania through its employees, agents, and/or sales representatives, and derived substantial revenue from such business in Pennsylvania. Defendant purposefully availed itself of personal jurisdiction in Pennsylvania because it contracted to provide insurance to Plaintiff in Pennsylvania which is the subject of this case.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(c) because Defendants are corporations that have substantial, systematic, and continuous contacts in Pennsylvania and within the Eastern District of Pennsylvania. Further, the insurance sold to Plaintiff which is the subject of this case was sold in the Eastern District of Pennsylvania.

8.      The acts and/or omissions complained of took place, in whole or in part, within the venue of this Court.

**PARTIES**

9.      At all relevant times, Plaintiff, V&S Elmwood Lanes, Inc., was authorized to do business and was doing business in the Commonwealth of Pennsylvania, in Philadelphia County. Plaintiff operates, manages and owns bowling alley at 7235 Elmwood Avenue, Philadelphia PA 19142 ("Insured Property"). V&S is a citizen of Pennsylvania.

10.     Defendant, Everest is an insurance carrier who provides business interruption insurance to Plaintiff. Everest is headquartered at 477 Martinsville Road, P.O. Box 830, Liberty Corner, NJ 07938. Everest is a citizen of New Jersey.

11.     Defendant, Specialty is an insurance carrier who provides business interruption insurance to Plaintiff. Specialty is headquartered at 111 Congressional Boulevard, Carmel, Indiana 46032. Everest is a citizen of Indiana.

12.     At all relevant times, Defendants are corporations doing business in the Commonwealth of Pennsylvania. Defendants issued an insurance policy with Policy Number 39 SBA UJ9464 to Plaintiff for the period June 14, 2019 to June 14, 2020. *See* Policy Declaration, attached hereto as Exhibit 1. Defendants transact the business of insurance in the Commonwealth of Pennsylvania and within the County of Philadelphia, and the basis of this suit arises out of such conduct.

13.     The policy for Plaintiff is currently in full effect, includes coverage for, among other things, business personal property, business income, special business income, and professional business income.

14.     Plaintiff submitted a claim for a business loss pursuant to its policy, seeking coverage under the policy. Defendant rejected Plaintiff's business loss and business interruption claims and other claims, contending, *inter alia,* that Plaintiff did not suffer physical damage to its

3

property directly and stating other reasons why Plaintiff is not purportedly entitled to coverage for the losses and damages claimed.

15. The rejection of their losses by Defendant because there was no physical damage to the property and the Virus Exclusion are invalid. Defendant's denials are in violation of their policies. The Virus Exclusion does not exclude coverage for losses associated with this pandemic and Plaintiff has suffered physical damage or loss.

## FACTUAL BACKGROUND

### I. Insurance Coverage

16. Defendant entered into a contract of insurance with Plaintiff, whereby payments were made to Defendant in exchange for Defendant's promise to indemnify Plaintiff for losses including, but not limited to, business income losses at Plaintiff's Insured Property.

17. Plaintiff's Insured Property is covered under the Policy issued by Defendant. *See* Ex. 1.

18. The Policy provides, among other things property, business personal property, business income and extra expense, contamination coverage, and additional coverages.

19. Plaintiff faithfully paid policy premiums to Defendant, specifically to provide, among other things, additional coverages in the event of business interruption or closures for a variety of reasons, including by order of Civil Authority.

20. Under the Policy, business interruption insurance coverage is extended to apply to, *inter alia,* the actual loss of business income sustained, and the actual, necessary and reasonable extra expenses incurred.

21. The Policy is an all-risk policy, insofar as it provides that covered causes of loss under the policy means direct loss or damage unless the loss is specifically excluded or limited in the Policy.

22. An all-risk policy such as that purchased by Plaintiff is one that protects against catastrophic events, such as the one occurring now, involving the global COVID-19 Pandemic that has resulted in the widespread, omnipresent and persistent presence of COVID-19 in and around Plaintiff's Insured Property, including adjacent properties.

23. Plaintiff's all-risk policy includes coverage for business interruption, which is standard in most all-risk commercial property insurance policies, along with coverage for extended expenses.

24. Plaintiff purchased the Policy expecting to be insured against losses, including, but not limited to, business income losses at the bowling alley.

25. Plaintiff purchased, among other coverages, business interruption coverage for closure by Order of Civil Authority.

26. Based upon information and belief, the Policy provided by Defendant included language that is essentially standardized language adopted from and/or developed by the ISO ("Insurance Service Office"). The ISO, founded in 1971, provides a broad range of services to the property and casualty insurance industry. In addition to form policies, ISO collects and manages databases containing large amounts of statistical, actuarial, underwriting, and claims information, fraud-identification tools, and other technical services. ISO describes itself as follows: "ISO provides advisory services and information to many insurance companies. … ISO develops and publishes policy language that many insurance companies use as the basis for their products." ISO General Questions, Verisk, https://www.verisk.com/insurance/about/faq/ (last visited June 5, 2020); *see also* Insurance Services Office (ISO), Verisk, https://www.verisk.com/insurance/brands/iso/ (last visited June 5, 2020).

27. The language in the Policy is language that is "adhesionary" in that Plaintiff was not a participant in negotiating or drafting its content and provisions.

28. Plaintiff possessed no leverage or bargaining power to alter or negotiate the terms of the Policy, and more particularly, Plaintiff had no ability to alter, change or modify standardized language derived from the ISO format.

29. Upon information and belief, the "Virus Exclusion" in the Policy was never intended by the ISO nor Defendant to pertain to a situation like the present global Pandemic of the Coronavirus and therefore does not apply to exclude coverage in this matter.

30. Upon information and belief, the Virus Exclusion in the policy was developed by the ISO in response to the SARS situation that occurred in or around 2005-2006, which was not a Pandemic and not a global Pandemic as is the present COVID-19 Pandemic situation, and therefore was never intended to exclude coverage for a circumstance as presented in this matter.

31. Further, the Virus Exclusion was first permitted by state insurance departments due to misleading and fraudulent statements by the ISO that property insurance policies do not and were not intended to cover losses caused by viruses, and so the Virus Exclusion offers mere clarification of existing law. To the contrary, before the ISO made such baseless assertions, courts considered contamination by a virus to be physical damage. Defendant's use of the Virus Exclusion to deny coverage here shows that the Virus Exclusion was fraudulently adopted, adhesionary, and unconscionable. *See* https://www.propertycasualty360.com/2020/04/07/here-we-go-again-virus-exclusion-for-covid-19-and-insurers/ (last visited June 12, 2020).

32. The Virus Exclusion applies only to "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."

33. Plaintiff purchased the Policy with an expectation that it was purchasing a policy that would provide coverage in the event of business interruption and extended expenses, such as that suffered by Plaintiff as a result of COVID-19.

34. At no time had Defendant, or its agents, notified Plaintiff that the coverage that Plaintiff had purchased pursuant to an all-risk policy that included business interruption coverage, had exclusions and provisions that purportedly undermined the very purpose of the coverage, of providing benefits in the occurrence of business interruption and incurring extended expenses.

35. The purported exclusions of the Policy that Defendant has or are expected to raise in defense of Plaintiff's claim under the Civil Authority coverage of the Policy are contradictory to the provision of Civil Authority Order coverage and violates the public policy of the Commonwealth of Pennsylvania and other states as a contract of adhesion and hence is not enforceable against Plaintiff.

36. Access to Plaintiff's business was prohibited by Civil Authority Orders which precluded Plaintiff from operating their insured properties in the manner intended, for which such insurance was purchased. The Policy provides for coverage for actual loss of business sustained and actual expenses incurred as a covered loss caused by the prohibitions of the Civil Authority Orders in the area of Plaintiff's Insured Property, which applies to circumstances presented by the Plaintiff.

37. The reasonable expectations of Plaintiff, *i.e.,* an objectively reasonable interpretation by the average policyholder of the coverage that was being provided, was that the business interruption coverage included coverage when a civil authority forced closure of the business for an issue of public safety involving the COVID-19 pandemic in the immediate area surrounding the Insured Property.

38. The Policy does not exclude the losses suffered by Plaintiff and therefore, the Policy does provide coverage for the losses incurred by Plaintiff.

39. Plaintiff suffered direct loss or damage within the definitions of the Policy as loss of use of property as it was intended to be used, as here, constitutes loss or damage.

40. The virus and bacterium exclusions do not apply because Plaintiffs' losses were not solely caused by a virus, bacterium or other microorganism. Instead, Plaintiffs' losses were caused by the entry of Civil Authority Order, particularly those by Governor Wolf and by the Pennsylvania Department of Health, to mitigate the spread of COVID-19. The Civil Authority Order was issued because the damage to individuals and property caused by COVID-19. The Civil Authority Orders were more than mere social distancing enactments.

41. The Civil Authority Order prohibited access to Plaintiff's Insured Property, and the area immediately surrounding Covered Property, in response to dangerous physical conditions described above resulting from COVID-19.

42. As a result of the presence of COVID-19 and the Civil Authority Order, Plaintiff lost Business Income and incurred Extra Expense.

43. Based on information and belief, Defendant has accepted the policy premiums with no intention of providing any coverage for business losses or the Civil Authority extension due to a loss and shutdown from a pandemic. Plaintiff contacted its insurance agent to make a claim under the policy and was told that Defendant would reject the claim.

**II. The Coronavirus Pandemic**

44. The scientific community, and those personally affected by the virus, recognize COVID-19 as a cause of real physical loss and damage. It is clear that contamination of the Insured Property is a direct physical loss requiring remediation to clean the surfaces of the bowling alley constituting the Insured Property.

45. The virus that causes COVID-19 remains stable and transmittable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard and up to two to three days on plastic and stainless steel. *See* https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last visited April 9, 2020).

46. The CDC has issued a guidance that gatherings of more than 10 people must not occur. People in congregate environments, which are places where people live, eat, and sleep in close proximity, face increased danger of contracting COVID-19.

47. On March 11, 2020 the World Health Organization ("WHO") made the assessment that COVID-19 shall be characterized as a pandemic. *See* https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020.

48. The global Coronavirus pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials, "fomites," for up to twenty-eight (28) days.

49. A particular challenge with the novel coronavirus is that it is possible for a person to be infected with COVID-19 but be asymptomatic. Thus, seemingly healthy people unknowingly spread the virus via speaking, breathing, and touching objects.

50. While infected droplets and particles carrying COVID-19 may not be visible to the naked eye, they are physical objects which travel to other objects and cause harm. Habitable surfaces on which COVID-19 has been shown to survive include, but are not limited to, stainless steel, plastic, wood, paper, glass, ceramic, cardboard, and cloth.

51. China, Italy, France, and Spain have implemented the cleaning and fumigating of public areas prior to allowing them to re-open publicly due to the intrusion of microbials.

52. A French Court has determined that business interruption coverage applies to the COVID-19 Pandemic. *See* https://www.insurancejournal.com/news/international/2020/05/22/569710.htm.

53. The determination by a Court of another country that coverage exists is consistent with public policy that in the presence of a worldwide Pandemic, such as COVID-19, businesses that possess business interruption insurance coverage should recover their losses from the insurance carriers.

### III.  Civil Authority for Pennsylvania

54. On March 6, 2020, Pennsylvania Governor Tom Wolf issued a Proclamation of Disaster Emergency, the first formal recognition of an emergency situation in the Commonwealth as a result of COVID-19. *See* Exhibit 2.

55. On March 19, 2020, Governor Wolf issued an Order requiring all non-life-sustaining businesses in Commonwealth to cease operations and close all physical locations. Businesses that were permitted to remain open were required to follow "social distancing practices and other mitigation measures defined by the Centers for Disease Control." *See* Exhibit 3.

56. On March 23, 2020, Governor Wolf issued a Stay-at-Home Order for residents of Philadelphia, Allegheny, Bucks, Chester, Delaware, Monroe, and Montgomery Counties. *See* Exhibit 4. On that same date, the Pennsylvania Department of Health issued a similar Order, noting that "operation of non-life-sustaining businesses present the opportunity for unnecessary gatherings, personal contact and interaction that will increase the risk of transmission and the risk of community spread of COVID–19." *See* Exhibit 5.

57. On April 1, 2020, Governor Wolf extended the March 23, 2020 Stay-at-Home Order to the entire Commonwealth of Pennsylvania. *See* Exhibit 6.

58. The Pennsylvania Supreme Court recently clarified the Governor's Orders and supported Plaintiff's position that physical loss and damage exists, resulting in coverage here. *See Friends of DeVito, et. al v. Wolf*, No. 68 MM 2020 (Pa. April 13, 2020).

59. The Orders in and around Plaintiff's place of business also explicitly acknowledge that COVID-19 causes direct physical damage and loss to property. For example, as noted above, in the *DeVito* case the Pennsylvania Supreme Court held the same. This is similar to what the City of New York Order explicitly stated that COVID-19 "is causing property loss and damage[.]" https://www1.nyc.gov/assets/home/downloads/pdf/executive-orders/2020/eeo-101.pdf.

60. Governor Wolf and Pennsylvania Secretary of Health have now extended the statewide stay-at-home orders through Friday, May 8, 2020. *See* https://www.governor.pa.gov/newsroom/gov-wolf-sec-of-health-extend-statewide-stay-at-home-order-until-may-8/ (last visited April 22, 2020).

61. On June 5, 2020, Philadelphia moved into the "yellow phase" permitting some business to open, but continued to prohibit bowling alleys to open. *See* Exhibit 7.

62. Further, on April 10, 2020, President Trump, expressing the expectations of the average policyholder, supported insurance coverage for business loss like that suffered by the Plaintiff:

> REPORTER: Mr. President may I ask you about credit and debt as well. Many American individuals, families, have had to tap their credit cards during this period of time. And businesses have had to draw down their credit lines. Are you concerned Mr. President that that may hobble the U.S. economy, all of that debt number one? And number two, would you suggest to credit card companies to reduce their fees during this time?
>
> PRESIDENT TRUMP: Well it's something that we've already suggested, we're talking to them. ***Business interruption insurance***, I'd like to see these insurance companies—you know you have people that have paid. When I was in private I had business interruption. When my business was interrupted through a hurricane

> or whatever it may be, I'd have business where I had it, I didn't always have it, sometimes I had it, sometimes, I had a lot of different companies. ***But if I had it I'd expect to be paid***. You have people. I speak mostly to the restaurateurs, where they have a restaurant, they've been paying for 25, 30, 35 years, business interruption. They've never needed it. All of a sudden they need it. And I'm very good at reading language. I did very well in these subjects, OK. And I don't see the word pandemic mentioned. Now in some cases it is, it's an exclusion. But in a lot of cases I don't see it. I don't see it referenced. And they don't want to pay up. I would like to see the insurance companies pay if they need to pay, if it's fair. And they know what's fair, and I know what's fair, I can tell you very quickly. But business interruption insurance, that's getting a lot money to a lot of people. And they've been paying for years, sometimes they just started paying, but you have people that have never asked for business interruption insurance, and they've been paying a lot of money for a lot of years for the privilege of having it, and then when they finally need it, the insurance company says 'we're not going to give it.' We can't let that happen.

https://youtu.be/cMeG5C9TjU (last visited on April 17, 2020) (emphasis added).

63. The President is articulating a few core points:

   a. Business interruption is a common type of insurance. It applies to a variety of business establishments.

   b. Businesses pay in premiums for this coverage and should reasonably expect they'll receive the benefit of the coverage.

   c. This pandemic should be covered unless there is a specific exclusion for pandemics.

   d. If insurers deny coverage, they would be acting in bad faith.

   e. Public policy considerations support a finding that coverage exists and that a denial of coverage would be in violation of public policy.

64. These Orders and proclamations, as they relate to the closure of all "non-life-sustaining businesses," evidence an awareness on the part of both state and local governments that COVID-19 causes damage to property. This is particularly true in places where business is conducted, such as Plaintiff's, as the requisite contact and interaction causes a heightened risk of

the property becoming contaminated and required constant sanitation and cleaning to avoid spread of COVID-19.

65. Plaintiff did not have the ability or right to ignore these Orders and proclamations as doing so would expose Plaintiff to fines and sanctions.

66. Plaintiff's adherence to the requirements of these Orders and proclamations was in furtherance of the protecting the public, the public's good, supportive of public policy to attempt to minimize the risk of spread of COVID-19 and consistent with it complying with the Civil Authority Orders entered.

## IV. Impact to Plaintiff

67. As a result of the Orders referenced herein, access to Plaintiff's Insured Property was in fact no longer available and its business suspended from its intended operations.

68. As a consequence of the Orders, Plaintiff completely suspended its ordinary operations as of March 16, 2020.

69. Prior to March 16, 2020, Plaintiff was open. Plaintiff's bowling alley is not a closed environment, people – staff, customers, and others – constantly cycle in and out of the shop. Accordingly, there is an ever-present risk that the Insured Property is contaminated and would continue to be contaminated and open access presented an ever-present risk that people entering the Insured Property could be exposed to COVID-19 and become ill from such exposure. To eradicate any Coronavirus that was present in the facility, Plaintiff regularly cleaned and sanitized its facility.

70. Plaintiff could not use its property for its intended purpose. Therefore, the novel coronavirus has caused "direct physical loss of or damage to" Plaintiff's property insured under the policy.

71. Plaintiff's business is highly susceptible to rapid person-to-property transmission of the virus, and vice-versa, because the activities of the customers and the staff require them to work in close proximity to one another within the property and to come in contact with personal property within the building premises that could contain the COVID-19 novel coronavirus.

72. The virus is physically impacting the Insured Property. Any effort by Defendant to deny the reality that the virus causes physical loss and damage would constitute a false and potentially fraudulent misrepresentation that could endanger Plaintiff and the public.

73. Plaintiff's bowling alley including the Insured Property, is highly susceptible to contamination and damage, from, among other things, the rapid person-to-person and person-to-property contamination as COVID-19 is carried into the Insured Property from the surrounding area and other contaminated and damaged premises.

74. Because of the nature of COVID-19 as described above, relating to its persistence in locations and the prospect of causing asymptomatic responses in some people, the risk of infection to persons is not only high, but could cause persons with asymptomatic responses to then come into contact with others who would not be so fortunate as to suffer merely an asymptomatic response, and instead suffer serious illness.

75. The Civil Authority Orders entered by the state and local government were in the exercise of authority to protect the public and minimize the risk of spread of disease.

76. Even with the entry of these Civil Authority Orders there remained physical impact not only in and within Plaintiff's business property but in and around the surrounding location of Plaintiff's business property in light of COVID-19 presence not being detectable other than through microscopic means, and occurrence of illness.

77. The entry of the Civil Authority Orders to mitigate health risks to the public by attempting to prevent COVID-19 contamination, through the closing businesses and ordering persons to stay at home resulted in a physical impact on Plaintiff's business and Insured Property.

78. Plaintiff specifically sought coverage for business interruption losses and extended expenses and paid premiums for such coverage and with an expectation that the Policy Plaintiff purchased provided such coverage, with no disclosures to the contrary being made to Plaintiff by Defendant or its agents.

79. Plaintiff had no choice but to comply with the Civil Authority Orders, for failure to do so would have exposed Plaintiff and his business to fines and sanctions. Plaintiff's compliance with mandates resulted in Plaintiff suffering business losses, business interruption and extended expenses of the nature that the Policy covers and for which Plaintiff's reasonable expectation was that coverage existed in exchange for the premiums paid. As a result of these Orders, Plaintiff has incurred, and continues to incur, among other things, a substantial loss of business income and additional expenses covered under the Policy.

80. A declaratory judgment determining that coverage exists under the Policy will prevent Plaintiff from being left without vital coverage acquired to ensure the survival of its business due to the shutdown caused by the civil authorities' response is necessary.

## CAUSE OF ACTION

### DECLARATORY RELIEF

81. Plaintiff re-alleges and incorporates by reference into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

82. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the

rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

83. An actual controversy has arisen between Plaintiff and Defendant as to the rights, duties, responsibilities and obligations of the parties under the Policy in that Plaintiff contends and, on information and belief, Defendant disputes and denies, *inter alia,* that:

 a. The Orders constitute a prohibition of access to Plaintiff's Insured Property;

 b. The prohibition of access by the Orders has specifically prohibited access as defined in the Policy;

 c. The Orders trigger coverage;

 d. The Policy provides coverage to Plaintiff for any current and future closures in Pennsylvania due to physical loss or damage directly or indirectly from the Coronavirus and/or pandemic circumstance under the Civil Authority coverage parameters;

 e. The Policy's exclusions for virus and bacteria do not apply to the circumstances presented in the lawsuit and the kind and types of damages and losses suffered by Plaintiff;

 f. Defendant's denial of coverage for losses sustained that were caused by the entry of the Civil Authority Orders referenced, and Plaintiff's adherence to the Civil Authority Orders violates public policy;

 g. The under the circumstances of this Pandemic and the entry of the Civil Authority Orders referenced, Plaintiff's had no choice but to comply with the Civil Authority Orders, and that Plaintiff's compliance resulting in Plaintiff suffering business losses, business interruption and extended expenses is therefore a covered expense;

 h. The Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the insured premises or immediate area of the Insured Property; and

 i. Resolution of the duties, responsibilities and obligation of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute and controversy.

84. Plaintiff seeks a Declaratory Judgment to determine whether the Orders constitute a prohibition of access to Plaintiff's Insured Property.

85.    Plaintiff further seeks a Declaratory Judgment to affirm that the Orders trigger coverage.

86.    Plaintiff further seeks a Declaratory Judgment to affirm that the Policy provides coverage to Plaintiff for any current and future closures of businesses such as Plaintiff's in Pennsylvania due to physical loss or damage from the Coronavirus and/or the pandemic and the policy provides business income coverage in the event that Coronavirus has caused a loss or damage at the Insured Property.

87.    Plaintiff does not seek any determination of whether the Coronavirus is physically in or at the Insured Property, amount of damages, or any other remedy other than declaratory relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff herein prays as follows:

a. For a declaration that the Orders constitute a prohibition of access to Plaintiff's Insured Property.

b. For a declaration that the prohibition of access by the Orders is specifically prohibited access as defined in the Policy.

c. For a declaration that the Orders trigger coverage under the Policy.

d. For a declaration that the Policy provides coverage to Plaintiff for any current and future closures in Pennsylvania due to physical loss or damage directly or indirectly from the Coronavirus and/or pandemic circumstance under the Civil Authority coverage parameters.

e. For a declaration that the Policy's exclusions for virus and bacteria do not apply to the circumstances presented in the lawsuit and the kind and types of damages and losses suffered by Plaintiff.

f. For a declaration that Defendant's denial of coverage for losses sustained that were caused by the entry of the Civil Authority Orders referenced, and Plaintiff's adherence to the Civil Authority Orders violates public policy.

g. For a declaration that under the circumstances of this Pandemic and the entry of the Civil Authority Orders referenced, Plaintiff's had no choice but to comply with the Civil Authority Orders, and that Plaintiff's compliance resulting in Plaintiff suffering business losses, business interruption and extended expenses is therefore a covered expense.

    h.  For a declaration that the Policy provides coverage to Plaintiff for any current, future and continued closures of non-essential businesses due to physical loss or damage directly or indirectly from the Coronavirus.

    i.  For a declaration that the Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the Plaintiff's Insured Property or the immediate area of the Plaintiff's Insured Property.

    j.  For such other relief as the Court may deem proper.

**<u>TRIAL BY JURY IS DEMANDED</u>**

Plaintiff hereby demands trial by jury.

Dated: July 14, 2020                                                                   Respectfully submitted,

*/s/ Daniel C. Levin*
Arnold Levin, Esq.
Laurence S. Berman, Esq.
Frederick Longer, Esq.
Daniel Levin, Esq.
**LEVIN SEDRAN & BERMAN, L.L.P.**
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500
alevin@lfsblaw.com
lberman@lfsblaw.com
flonger@lfsblaw.com
dlevin@lfsblaw.com

Richard M. Golomb, Esq.
Kenneth J. Grunfeld, Esq.
**GOLOMB & HONIK, P.C.**
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: (215) 985-9177
Facsimile: (215) 985-4169
rgolomb@golombhonik.com
kgrunfeld@golombhonik.com

W. Daniel "Dee" Miles, III, Esq.
Rachel N. Boyd, Esq.
Paul W. Evans, Esq.
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**

P.O. Box 4160
Montgomery, Alabama 36103
Telephone: (334) 269-2343
Facsimile: (334) 954-7555

*Counsel for Plaintiff*